## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ABRAHAM THOMAS,

     *Plaintiff*,

     v.

UNITED STATES POSTAL SERVICE,

     *Defendant*.

_____/

Case No. 2:22-cv-11506

District Judge
Gershwin A. Drain

## ORDER GRANTING DEFENDANT'S
## PARTIAL MOTION TO DISMISS [#29]

This matter is before the Court on Defendant United States Postal Service's ("USPS") Partial Motion to Dismiss. ECF No. 29. Upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter and will resolve the instant motion on the briefs. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated herein, Defendant's Motion is granted.

## I.     BACKGROUND

Abraham Thomas ("Plaintiff") is a 41-year-old Asian-Indian man and a former employee at USPS in Warren and Pontiac, Michigan. ECF No. 26, PageID.893–894. He worked at USPS from May 2014 to March 2023 and held multiple positions in both mail distribution and customer service. *Id.* at PageID.894. Proceeding *pro se*, he alleges that USPS subjected him to multiple

forms of discrimination during his time there, including discrimination based on his race, national origin, gender, and disability status. The following summary of facts is derived from Plaintiff's Amended Complaint.

***

In 2016, Plaintiff was employed as a mail carrier at a USPS office in Warren, Michigan. His problems began in March of that year when he twisted his ankle while delivering mail in the snow. *Id.* at PageID.895. He reported his injury to Christine McSwain, the evening supervisor, on March 2, 2016 and was sent to urgent care by Post Office management the next day. *Id.* He alleges that on March 9 he was not granted a requested accommodation for the ankle and was required to work a full 10 hours. *Id.* The next day, Plaintiff slipped a disc in his back while preparing for a delivery route. *Id.* He states that a coworker reported his injury to management, which caused David Staller, a customer service supervisor, to threaten him and send him home without medical attention. *Id.* Plaintiff later attempted to work through his injury, but driving with an injured back proved too difficult. After again being taken to the hospital, he received a threatening voicemail from Staller that he "was going to send special forces after him." *Id.* Though injured, Plaintiff was not granted Continuation of Pay leave, so he was

required to resume work before fully recovering.[1] *Id.* at PageID.896.

On April 12, 2016, Plaintiff was issued a Notice of Proposed Removal, signifying USPS's intent to terminate him. *Id.* The Notice stated that Plaintiff had violated the Employee and Labor Relations Manual. *Id.* Three days later, he and USPS entered a mutual grievance agreement that Plaintiff would not file an EEOC complaint in exchange for the Notice being reduced to "an official discussion." *Id.* Plaintiff later discovered that the Notice of Removal was sent to his personal folder despite the agreement. *Id.*

Plaintiff took an exam for a promotion to the Maintenance Craft around January 2018 and received a score of "eligible." The application began processing on January 9, 2018, but the process was suddenly stopped without notice. *Id.* at PageID.901. When Plaintiff's brother applied for the same position, he was also deemed eligible and was also denied the promotion. *Id.* at PageID.902. Nonetheless, several non-Indian employees were promoted or otherwise hired to the position instead. *Id.*

Plaintiff continued to serve as a mail carrier, but he struggled with heavy bundles due to a sore back. On July 20, 2018, he sought assistance because he had difficulty with heavy bundles and had seen employees receive such assistance on

---

[1]Continuation of Pay leave (COP) is a function of USPS's injury compensation program. If granted COP, an employee is entitled to continue receiving regular pay for up to 45 days while recovering from injury.

many occasions. *Id.* at PageID.902. His request was denied by Derrell Summerville, who told Plaintiff that "it is illegal to help Plaintiff (sic) for carrying heavy packages." *Id.* He was also refused multiple requests to accommodate his back pain and reduce his third mail bundle between August and October 2018. *Id.* at PageID.903. He alleges that when he reported his sore back on September 2018, he was instructed to deliver his packages as normal. *Id.*

Plaintiff was diagnosed with a degenerative disc disorder in December 2018. He was referred to physical therapy and was prescribed pain medication that month. *Id.* at PageID.904–905. He alleges that despite these injuries, USPS supervisors failed to offer him a reasonable accommodation, often requiring him to perform jobs that necessitated deep bending or pushing and pulling heavy items. *Id.* at PageID.905. When Plaintiff informed supervisors that his assignments were too cumbersome, he was told that no other job was available and that he could go home if he was unhappy. *Id.* Nonetheless, non-Indian employees were given assignments that fit their medical restrictions. *Id.*

On July 12, 2019, Plaintiff suffered a panic attack while working a long route with numerous apartments. He returned to his office and was told by Summerville that he would be considered Absent Without Leave if he refused to finish the mail route. *Id.* at PageID.906. Plaintiff was prescribed psychiatric medication and subsequently decided to leave USPS. *Id.* The workers

4

compensation office denied his mental disability claim, so Plaintiff was required to pay back compensation he received under the Continuation of Pay program in 2020. He would eventually accept reassignment to Troy, Michigan in the Customer Care Center. *Id.* at PageID.907.

Plaintiff worked in the new position for a short time before winning a bid to work as a Parcel Post Distribution clerk in Pontiac, Michigan. *Id.* at PageID.909. Soon after, he suffered recurring back pain on the job and could not work for two weeks. *Id*. After this incident, he unsuccessfully applied to be transferred back to the Customer Care Center. *Id.* at PageID.910. That February, Plaintiff sought to fill out form PS 3971, which would have permitted him to request leave for various reasons. *Id.* He was informed by the acting supervisor that management prohibited him from receiving the form. *Id.* He was then denied his request to take annual vacation instead. *Id.*

Plaintiff reported multiple failures to accommodate his back pain and instances of allegedly discriminatory retaliation and harassment to manager Alfred Washington. *Id.* at PageID.909–911. In response, management "started diverting and delayed the bundle to the Plaintiff working area, so everyone forced to work in the location where Plaintiff got hurt." *Id.* at PageID.912 (quoted as written). He would later discover that he had been deemed Absent Without Leave for using vacation time, taking medical appointments, and taking leave under the Family

Medical Leave Act ("FMLA"). *Id.* When Plaintiff again sought form PS 3971 in August 2022 after suffering severe muscle spasms, Washington yelled at him and refused to give him the form. *Id.* at PageID.912–913. He again did not work several days after this incident. *Id.* at PageID.913.

In June or July 2022, Plaintiff began the resignation process. *Id.* at PageID.914. In the meantime, he sought to fill out form PS 3971 but was refused by supervisor Gwen Barnes, who told him he would have to snatch it from her. *Id.* He filed a complaint with the USPS Office of Inspector General on June 14, 2022. *Id.* He was summoned for an investigative interview on July 22, 2022 regarding discrepancies in his attendance and attempts to obtain FMLA leave. *Id.* at PageID.916. Despite not receiving a verbal warning, Plaintiff was issued a Letter of Warning on August 5, 2022 "for exercising his FMLA rights for his accepted medical conditions[.]" *Id.* at PageID.916. Shortly after, Barnes filed a grievance with the union steward asserting that Plaintiff does not have any accepted condition qualifying him for FMLA leave. *Id.* at PageID.917. Barnes then prevented him from speaking with the union steward to submit documentation supporting his FMLA condition. Lastly, he asserts that another supervisor, Precilla Bond-Brown, altered information in the office system to disqualify Plaintiff from FMLA-recertification in January 2023. *Id.* at PageID.918. He would leave USPS two months later.

***

Based on the events outlined above, Plaintiff filed three complaints with the Equal Employment Opportunity Commission ("EEOC") in a span of roughly four years. He filed Complaint No. 4J-481-009218 on May 12, 2018, alleging "discrimination based on race and in reprisal for prior protected activity when he was informed that his reassignment request was no longer being processed." *Id.* at PageID.940. After reconsideration and appeal, the EEOC found no discrimination and issued a right to sue letter on April 4, 2022. *Id.* at PageID.941. Plaintiff filed a second EEOC complaint, No. 4J-481-0182-18, on November 18, alleging that while working at the Warren Post Office, "he was subjected to harassment/a hostile work environment based on race (Indian) and prior EEO . . .". *Id.* at PageID.947. This claim was based on Plaintiff's allegations that he had been repeatedly yelled at, denied assistance for his injuries, refused access to leave forms, and being spied on by USPS. *Id.* at PageID.947–948. The EEOC again found no discrimination on appeal and issued a right to sue letter on March 13, 2020. *Id.* at PageID.950–952.

Lastly, Plaintiff filed a formal EEOC complaint, No. 1F-441-0296-22, on November 4, 2022. *Id.* at PageID.942. This complaint was based on incidents occurring while he worked at the distribution center in Pontiac, Michigan. Plaintiff alleged that USPS subjected him to discrimination based on "race (Asian), national origin (Indian), disability (physical), and reprisal for prior protected EEO

activity[.]" *Id.* This complaint was dismissed as untimely, and the decision was affirmed on appeal with a right to sue letter issued on April 19, 2023. *Id.* at PageID.943–944.

***

Plaintiff filed suit on July 5, 2022 using a form complaint provided for *pro se* litigants. ECF No. 1. Plaintiff checked boxes on his form indicating that he intended to bring claims for racial and national origin discrimination against USPS under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. *Id.* at PageID.4. His core allegations were that USPS discriminatorily failed to promote him because of his Indian background and promoted others who were not of the same race or national origin. *Id.* at PageID.6. Defendant filed a Motion for a More Definite Statement on May 3, 2023 and highlighted several factual and procedural deficiencies in Plaintiff's Complaint. ECF No. 19. The Court granted this Motion and required Plaintiff to submit an amended complaint that properly outlined his claims. ECF No. 25.

Plaintiff filed the Amended Complaint ("Complaint") on October 21, 2023, bringing 11 Counts: (I) Title VII – Race Discrimination; (II) Title VII – Gender Discrimination; (III) Title VII – National Origin Discrimination; (IV) Title VII and Rehab Act – Retaliation; (V) Rehab Act – Disability Discrimination; (VI) Title VII – Failure to Accommodate Religious Practice; (VII) Violation of FMLA Rights;

(VIII) ADEA – Age Discrimination; (IX) EPA – Violation of Equal Pay; (X) WPA – Violation of the Whistleblower Protection Act; and (XI) Delay or Destruction of Mail. ECF No. 26. Plaintiff offers that he has exhausted his claims and is suing pursuant to a right to sue letters issued in EEOC Case Nos. 4J-481-0092-18 and 1F-441-0296-22. *Id.* at PageID.892–893.

The Court now considers USPS's Partial Motion to Dismiss. ECF No. 29. USPS seeks dismissal of all of Plaintiff's claims other than those related to Count VII (FMLA). *Id.* at PageID.980. It argues that most other claims are subject to dismissal either because they were not properly exhausted or because Plaintiff fails to state a claim. *Id.*

## II.   LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint is not required to contain detailed allegations, "however it must assert sufficient facts to provide the defendant with 'fair notice of what the claim is and the ground

upon which it rests.'" *Mellentine v. Ameriquest Mortg. Co.*, 515 F. App'x 419, 424 (6th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555) (cleaned up)).

## III. DISCUSSION

### A. Plaintiff's Non-Exhausted Claims Must be Dismissed.

In most instances, the exhaustion doctrine requires an employee who wishes to bring a claim for workplace discrimination under Title VII, the ADA, the Rehab Act, and the ADEA to exhaust her administrative remedies. To satisfy this requirement, an employee must file a formal charge of discrimination with the EEOC that includes all claims intended to be brought in federal court. *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 236 (6th Cir. 2017) (stating that exhaustion is required for Title VII and the ADA); *Ky., Educ. & Workforce Dev. Cabinet, Office for the Blind v. United States*, 759 F.3d 588, 598 (6th Cir. 2014) (stating that the prudential exhaustion requirement for the ADEA "is certainly not optional."); *Smith v. USPS*, 742 F.2d 257, 262 (6th Cir. 1984) (requiring administrative exhaustion for Rehab Act claims).

This requirement is not intended to be overly rigid. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Rather, it is intended primarily to "trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004).

As such, "the EEOC complaint should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph*, 453 F.3d at 732 (quoting *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)).

***

Though Plaintiff has filed five formal charges of discrimination before the EEOC, the claims in the Complaint cite back to only two: Case Nos. 4J-481-0092-18 and 1F-441-0296-22. ECF No. 26, PageID.893. Following the EEOC's investigation, Plaintiff was issued letters notifying him of his 90-day window to sue on these charges on April 04, 2022 and April 19, 2023. ECF No. 26, PageID.941, 946. As such, he has satisfied the timeliness requirement. USPS nonetheless argues that many of Plaintiff's claims must be dismissed for failure to exhaust.

Upon review, the Court finds that Counts I (in part)[2], II–VI, VIII, and X must be dismissed because Plaintiff has failed to exhaust his administrative remedies.

### i.    Counts I–IV and VI: Title VII (2022)

Title VII forbids employers from discriminating against an individual because of his or her race, color, religion, sex, or national origin. *See* 42 U.S.C. §

---

[2]Plaintiff also brings race discrimination claims in Count I based on incidents having occurred in 2018. These claims were administratively exhausted via EEOC Charge No. 4J-481-0092-18 and will be considered on the merits separately.

11

2000e-2(a). Further, the act prohibits discriminating against an employee for engaging in protected conduct, including filing EEOC complaints. *Laster v. City of Kalamazoo*, 746 F.3d 714, 729-30 (6th Cir. 2014).

Plaintiff brings multiple Title VII claims alleging discrimination based on race, gender, national origin, disability, and religious practice. ECF No. 26, PageID.919–929. The gender and religious practice claims may be swiftly dismissed, however, because Plaintiff fails to show that he brought those allegations before the EEOC. It is well settled that the Complaint must be limited to the scope of the EEOC charge. The purpose of the exhaustion requirement is to trigger an EEOC investigation into the allegations and to facilitate subsequent procedures that may prevent litigation. *Dixon*, 392 F.3d at 217. To reiterate, between both relevant EEOC charges, Plaintiff brought complaints alleging only that he had been discriminated against on the basis of race, national origin, and disability. *See* No. 26, PageID.940, 942. Plaintiff's gender and religious practice claims are new to the Complaint and thus have not been investigated by the Commission. Thus, the Court finds that Counts II and VI have not been exhausted. Because "the exhaustion of administrative remedies is a condition precedent to a Title VII" action, these Counts must be dismissed. *Williams v. Nw. Airlines*, 53 F. App'x 350, 351 (6th Cir. 2002).

The Court must also dismiss Plaintiffs' 2022 Title VII claims that

purportedly stem from EEOC Charge No. 1F-441-0296-22. *See* ECF No. 26, PageID.942. Plaintiff alleged there that USPS discriminated against him because of his race, national origin, and disability between April and August 2022. *Id.* at PageID.942–943. He also claimed that he was retaliated against during this time for his prior EEOC activity. *Id.* The EEOC "dismissed the entire complaint as untimely filed" because Plaintiff failed to file his formal complaint "within fifteen (15) calendar days after receipt of the notice of the right to file a formal complaint." *Id.* at PageID.943–944. This decision was affirmed on appeal. *Id.* at PageID.944. These facts demonstrate as a matter of law that Plaintiff failed to exhaust the claims brought in this charge. *Jackson v. U.S. Postal Serv.*, 816 F.2d 680 (6th Cir. 1987) (ruling that the plaintiff was precluded from bringing a complaint in federal court because he did not file a formal EEOC complaint during the 15-day window); *Kuriakose v. Veterans Affairs Ann Arbor Healthcare Sys.*, No. 14-12972, 2017 U.S. Dist. LEXIS 171098, at *46 (E.D. Mich. Oct. 17, 2017) (granting summary judgment for the defendant on exhaustion because plaintiff failed to file a formal EEOC complaint in the 15-day time limit).

Because the EEOC's 15-day time limit is not a jurisdictional bar to bringing a suit in federal court, a plaintiff may sometimes maintain an otherwise non-exhausted claim where equitable tolling is appropriate. *Zipes v. TWA*, 455 U.S. 385, 393 (1982). Nonetheless, the Supreme Court has made clear that tolling

should be permitted only sparingly, and the Sixth Circuit has noted that equitable tolling is "available only in compelling cases which justify a departure from established procedures." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) (quoting *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). There are several factors that assist in determining whether tolling is appropriate, but Plaintiff fails to argue that any lend him support:

> In considering whether equitable tolling should apply, we generally look at five factors: (1) whether the plaintiff had actual notice of the time restraint; (2) whether she had constructive notice of the time restraint; (3) the degree of diligence exerted in pursuing her rights; (4) the degree of prejudice to the defendant; and (5) the reasonableness of plaintiff's ignorance of the time constraint.

*Steiner*, 354 F.3d at 435. Plaintiff offers no argument elucidating his notice of the time constraint or his diligence in pursuing his rights. Of course, the loss of any cause of action stemming from his 2022 charge is prejudicial to Plaintiff. But his long history of filing EEOC charges and otherwise pursuing relief before the Commission has certainly familiarized him with the process. There is no excuse for his failure to timely file. Accordingly, to the extent they are based on incidents occurring in 2022, the Title VII claims in Counts I, III, and IV must also be dismissed.

### ii. Counts IV and V: The Rehab Act

The Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*. (the "Rehab Act")

prohibits entities that receive federal funding from discriminating against an "otherwise qualified individual with a disability . . . solely by reason of her or his disability." 29 U.S.C. § 794(a). In Counts IV and V, Plaintiff alleges that USPS violated the Rehab Act by failing to grant him a reasonable accommodation for his disabilities, by retaliating against him for filing complaints with the EEOC, and by retaliating against him for exercising rights afforded to him under the Federal Employees' Compensation Program ("FECA"). ECF No. 26, PageID.924–929.

Because Counts IV and V are based on incidents having occurred in 2022, Plaintiff's claims must be dismissed for lack of exhaustion. *Supra* section III(A)(i). As with Title VII, an employee alleging discrimination against a federal agency under the Rehabilitation Act must exhaust his administrative remedies before bringing suit in federal court. *Taylor v. Donahoe*, 452 F. App'x 614, 617 (6th Cir. 2011). This requirement also applies to any retaliation claims based on incidents that occurred *before* the EEOC charge was filed. *Id.* ("Although retaliation claims are often excepted from the exhaustion requirement when they arise after an EEOC charge is filed, retaliation claims based on conduct that preceded the charge must be included in that charge.").

Plaintiff's disability and retaliation claims all relate back to EEOC Charge No. 1F-441-0296-2. ECF No. 26, PageID.942–946. Plaintiff does not allege disability discrimination in his 2018 EEOC Charge No. 4J-481-0092-18. He also

does not allege that discrimination of any kind occurred after, or because, he filed with the Commission on November 4, 2022. *See id.* at PageID.918, 942. Thus, the only potential disability claims arise from the 2022 allegations found in Charge No. 1F-441-0296-2. As discussed, the EEOC dismissed that complaint in its entirety because Plaintiff failed to file within fifteen days of receiving notice to do so. *Supra* section III(A)(i). Accordingly, Plaintiff has not exhausted the disability claims contained in that EEOC filing, and this Court has been given no grounds supporting equitable tolling. *Id.*; *Jackson*, 816 F.2d at 680. Thus, Plaintiff's discrimination and retaliation claims, Counts IV and V, must be dismissed for failure to exhaust.

### iii.    Count VIII: The ADEA

The Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq* (the "ADEA") makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The ADEA is intended "to protect older workers from being 'deprived of employment on the basis of inaccurate and stigmatizing stereotypes' and to ensure that employers evaluate their employees on the basis of their merits and not their age." *Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Plaintiff alleges in Count

VIII of the Complaint that USPS subjected him to intimidation, harassment, and a hostile work environment because of his age. ECF No. 26, PageID.932.

Plaintiff's ADEA claims must be dismissed for failure to exhaust his administrative remedies. Unlike with Title VII and Rehab Act claims, an employee seeking to bring an action under the ADEA has two options to satisfy the exhaustion requirement. The employee may either (1) invoke the EEOC's administrative procedures before proceeding in federal court or (2) give the EEOC at least 30 days' notice that she intends to proceed directly to federal court. *McKnight v. Gates*, 282 F. App'x 394, 397 (6th Cir. 2008) (citing 29 U.S.C. § 633a). Failure to comply with either requirement is an appropriate basis for dismissal. *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) (affirming dismissal of ADEA claim for failure to exhaust administrative remedies). As previously noted, neither of Plaintiff's EEOC charges include allegations that USPS discriminated against him because of his age. Further, Plaintiff has offered no evidence showing that he notified the EEOC of his intent to bring his ADEA claims to federal court in the first instance.

Because Plaintiff has failed to satisfy either of the mandatory ADEA prerequisites, Count VIII must be dismissed.

### iv.    Count X: Whistleblower Protection Act

The Whistleblower Protection Act, 5 U.S.C. § 2302 (the "WPA") makes it

unlawful for a federal employer to take a personnel action against an employee who makes a protected disclosure, such as unlawful activity. *Eluhu v. VA*, 801 F. App'x 952, 955 (6th Cir. 2020) (citing 5 U.S.C. § 2302(b)(8). The WPA affords employees a private right of action if they are retaliated against for being a whistleblower. *Rhodes v. OPM*, 110 F. App'x 118, 120 (Fed. Cir. 2004). However, the Act requires individuals to exhaust their administrative remedies before bringing suit in federal court. *Richards v. Kiernan*, 461 F.3d 880, 885 (7th Cir. 2006) ("Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistle-blower cause of action brought directly before it in the first instance.") (quoting *Stella v. Mineta*, 350 U.S. App. D.C. 300, 284 F.3d 135, 142 (2002)).

To exhaust a WPA claim, an employee must first "seek corrective action from the [Office of Special Counsel] before seeking corrective action from the [Merit Systems Protection Board]," which hears appeals brought by federal employees. 5 U.S.C. § 1214(a)(3). Only after this process is complete may an employee seek judicial review of a Board decision. 5 U.S.C. § 1214(c); *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 920 (7th Cir. 2018); *Harris v. Evans*, 66 F. App'x 465, 466 (4th Cir. 2003) ("Judicial review of a WPA claim occurs only after the Merit Systems Protection Board has issued a final decision on the claim."). Because the WPA's exhaustion scheme is jurisdictional, failure to comply requires

that the claim be dismissed.

Plaintiff alleges in Count X that USPS violated the WPA by taking multiple employment actions against him because he reported the alleged delay and diversion of mail bundles to the Office of Inspector General. ECF No. 26, PageID.934–935. He does not, however, allege that he has exhausted his administrative remedies as outlined above. For this reason, Count X must be dismissed.

### B. Counts I, IX, and XI Must Be Dismissed for Failure to State a Claim

Defendant argues that all of Plaintiff's remaining claims, other than his FMLA claims, must be dismissed for failure to state claim. Upon review, the Court holds that Counts I, IX, and XI are dismissed.

### i. Count I: Title VI (2018)

USPS concedes that Plaintiff's EEOC Charge No. 4J-481-0092-18 properly exhausted his race discrimination claim to the extent it is based on events that took place in 2018. ECF No. 29, PageID.987. Nonetheless, USPS argues that "the amended complaint fails to coherently allege sufficient factual material to state any race discrimination claim." *Id.* To establish a prima facie case of Title VII race discrimination, a plaintiff must allege that "(1) he is a member of a protected class, (2) he was qualified for the job and performed it satisfactorily, (3) despite his qualifications and performance, he suffered an adverse employment action, and (4)

he was replaced by a person outside the protected class or was treated less favorably than a similarly situated person outside of his protected class." *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 45 (6th Cir. 2020).

Though these elements guide the Court's consideration, "a plaintiff is not required to plead facts establishing a prima facie case" at the motion to dismiss stage. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024). Rather, a Title VII complaint must only "allege factual content sufficient to allow a court to 'draw the reasonable inference' that the employer discriminated against the plaintiff." *Blount v. Char Rest.*, No. 23-6013, 2024 U.S. App. LEXIS 10863, at *4 (6th Cir. May 2, 2024) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012)).

Plaintiff contends that the Complaint offers sufficient facts to suggest that USPS discriminated against him because of his race when it halted his promotion in 2018. ECF No. 34, PageID.1105. This is the only allegation made, and thus the only allegation exhausted, in Plaintiff's 2018 racial discrimination charge. *See* ECF No. 26, PageID.940; *Tisdale v. Federal Exp. Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (ruling that the judicial complaint "must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination."). There is no argument that additional instances of discrimination should have been reasonably expected to grow out of Plaintiff's failure-to-promote claim.

*\*\**

Plaintiff argues that in January 2018, USPS discriminated against him while considering his application to be promoted to "Maintenance Craft" from his then position as a mail carrier. *Id*.; *see* ECF No. 26, PageID.901. He alleges that even though he received a score of "eligible" on the promotion exam, his promotion was halted while other non-Indian employees were promoted to the position. ECF No. 26, PageID.901. Plaintiff states that when he sought an explanation for his outcome, a Human Resources specialist told him that he could not be processed because only fully qualified applicants were being promoted, rather than applicants who needed additional training. ECF No. 34, PageID.1106. This policy is fully explained in the EEO's underlying Alternative Dispute Resolution Specialist's Inquiry Report:

> An inquiry was conducted and HR Staffing Specialist Cheryl Blair states she was told by Area, not local management, that she could only process people who are currently fully qualified. She explains that normally they have up to one year to fulfill the qualification requirements and their current position is held in case they are unable to meet the requirements and need a position to go back to. Blair explains that since Counselee was applying across facilities, his position couldn't be held and he would have no job to go back to if he was unable to fulfill the requirements within the one year timeframe. She further states that if there are positions posted in-service at Warren, the office Counselee currently works at, he could be processed pending qualification but she can't process anyone across facilities in maintenance who isn't already fully qualified.

ECF No. 20, PageID.443.[3] Lastly, Plaintiff alleges that after he initiated an EEOC

inquiry into the matter, USPS conducted several reviews of his attendance. ECF

No. 26, PageID.902.

Upon review of Plaintiff's allegations, the Court finds that the 2018 racial

discrimination claim must be dismissed. To start, Plaintiff does not dispute that the

explanation he was given for his failed promotion was true, and he fails to show

that the promotion policy was discriminatorily applied. He properly alleges that

non-Indian employees had transfers processed during the time his was halted.

Critically, however, Plaintiff does not establish that *he* was qualified for the

promotion he sought. He does not describe at all what the qualifications for the

position were and how those requirements contrasted with his own experience.

Nonetheless, it is clear from the pleadings that Plaintiff required additional training

and/or qualifications to serve as a maintenance custodian while others did not.

To combat this finding, Plaintiff cites to a register of assertedly Black and

White letter carriers who were, as he argues, promoted despite not completing a

---

[3]Though this report is not contained within the Complaint, the Court considers it
because there is no dispute as to its veracity and because it clarifies the policy
Plaintiff describes. *See Ouwinga v. Benistar 419 Plan Servs.*, 694 F.3d 783, 797
(6th Cir. 2012) (though the Court is generally limited to only considering the
complaint on a motion to dismiss, "documents integral to the complaint may be
relied upon, even if they are not attached or incorporated by reference" so long as
it is "clear that there exist no material disputed issues of fact regarding the
relevance of the document."). Further, Plaintiff's citation to this passage in his
response brief suggests that he does not contest that it accurately recounts the
explanation he was given by HR. *See* ECF No. 34, PageID.1106 ¶ 2.

full year of training prior to promotion. *See* ECF No. 34, PageID.1106 (citing ECF No. 19-10, PageID.339. Ignoring the fact that this document is tangential to the pleadings, it is unclear what it shows other than a list of individuals who took the promotion exam and were subsequently hired. It does not establish, as the EEOC must have also found, that other similarly situated individuals were promoted while Plaintiff was not. Thus, the pleadings suggest that only fully qualified employees were being promoted at the time Plaintiff applied. To be sure, Plaintiff alleges that the "Maintenance Manager hired his own son from outside [the] Postal Service without any experience." ECF No. 26, PageID.901. But the Court cannot assess from this allegation the race, qualifications, or employment history of the Maintenance Manager's son.

Ultimately, Plaintiff's 2018 failure-to-promote allegations span only four paragraphs of the Complaint, describing actions that took place between January 2018 and May 2018 when he ultimately filed his EEOC Charge. These bald assertions are insufficient to suggest that Plaintiff was not promoted as a result of discriminatory animus and do not sufficiently allege race discrimination under Title VII. Thus, the remainder of Count I must be dismissed.

### ii.     Count IX: Equal Pay Act

In Count IX, Plaintiff alleges that USPS violated his rights under the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA") by denying him opportunities for

overtime work and promotions that have been made available to similarly situated female employees. ECF No. 26, PageID.933.

> The EPA prohibits employers from discriminating:

> between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . .

29 U.S.C. § 206(d)(1). In other words, the EPA requires employers to provide equal pay for equal work to all employees. The EPA does not reach much farther than this and, decidedly, does not contemplate most other forms of employment discrimination.

Given the limited scope of the EPA's coverage, Plaintiff's claims must be dismissed. He makes no allegation that he and a woman working the same position and doing the same work were paid differently. Rather, he argues only that he was denied overtime and refused promotions. Such claims are not within the EPA's protection. *Bielfelt v. Potter*, No. 1: 05CV2615, 2006 U.S. Dist. LEXIS 8587, at *8 (N.D. Ohio Mar. 6, 2006) (claim that male employees were getting overtime opportunities while plaintiff was not within the EPA's purview); *Ayalla v. United States Postmaster Gen.*, No. 15-7600-JAR-TJJ, 2016 U.S. Dist. LEXIS 15094, at *7 (D. Kan. Feb. 8, 2016) (finding that "the Equal Pay Act does not apply to claims relating to overtime or opportunities to work overtime[.]"); *Kassman v.*

*KPMG LLP*, 925 F. Supp. 2d 453, 471 (S.D.N.Y. 2013) (finding that "the EPA does not afford a remedy for denial of promotions[.]"); *Douglas v. Alfasigma USA, Inc.*, No. 19-cv-2272, 2021 U.S. Dist. LEXIS 113603, at *34 (N.D. Ill. June 17, 2021) (finding that unequal pay, not the failure to promote, is actionable under the EPA); *Lauper v. Cent. Parking Sys.*, 708 F.2d 725, 1982 U.S. App. LEXIS 11279, *4 (6th Cir. Dec. 20, 1982) ("the legislative history to the Equal Pay Act supports the interpretation that it is limited to claims of disparate wages.").

Thus, because the EPA provides no remedy for denied promotions or overtime, Count IX must be dismissed.

### iii.   Count XI: Delay or Destruction of Mail

Lastly, the Court must dismiss Count XI because it is based on a criminal, rather than civil, right of action. 18 U.S.C. § 1703 does not offer individuals such as Plaintiff the right to sue for destruction of mail. *Woods v. McGuire*, 954 F.2d 388, 391 (6th Cir. 1992) ("However, federal courts uniformly have held that there is no private right of action under [18 U.S.C. § 1703].").

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss is **GRANTED**. All Counts in the Complaint, except Count VII (FMLA), are **DISMISSED**.

**IT IS SO ORDERED**.

Dated:  July 3, 2024                              /s/ Gershwin A. Drain
                                                                GERSHWIN A. DRAIN
                                                                U.S. DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 3, 2024, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager