UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABRAHAM THOMAS,

Plaintiff,

Case No.: 2:22-cv-11506

v.                                          Hon. Gershwin A. Drain

UNITED STATES POSTAL
SERVICE,

Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#76]

### I.      INTRODUCTION

Plaintiff Abraham Thomas is a former employee of Defendant, the United States Postal Service. ECF No. 26, PageID.894. He worked for Defendant from May 2014 to March 2023 in various positions and in various locations. *Id.* Plaintiff brought a lawsuit against Defendant, alleging race, gender, national origin, religion, disability, and age discrimination, along with allegations that USPS violated the Equal Pay Act, the Whistleblower Protection Act, and the Family and Medical Leave Act, and delayed and destroyed mail. *Id.* at PageID.919–37. Upon Defendant's motion, the Court dismissed all of Plaintiff's claims except his Family and Medical Leave Act ("FMLA") claim. ECF No. 57. Thus, only the FMLA claim is pending.

1

Currently before the Court is Defendant's Motion for Summary Judgment on Plaintiff's FMLA claim. ECF No. 76. The matter has been fully briefed. *See id.*; ECF No. 78; ECF No. 82. Upon review of Plaintiff's motion, the Court finds that oral argument will not aid in its disposition. Accordingly, the Court will resolve the present motion on the parties' briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the following reasons, Defendant's Motion for Summary Judgment shall be GRANTED.

## II.   BACKGROUND

### a. *Factual Background*

Plaintiff worked for Defendant in mail distribution and customer service capacities at its Warren, Pontiac, and Troy, Michigan facilities from May 2014 to March 2023. ECF No. 26, PageID.894. Of relevance here is Plaintiff's employment at the Pontiac and Troy facilities. In September 2021, Plaintiff began working at the Pontiac USPS P&DC, and in October 2022, Plaintiff transferred to the Troy USPS call center, from which he ultimately resigned. ECF No. 26, PageID.909, 918; ECF No. 76-41; *see* ECF No. 76-4, PageID.2084–85 (stating that the days Plaintiff was allegedly wrongfully denied FMLA were all in 2022).

During Plaintiff's employment, Plaintiff had two approved cases for intermittent FMLA leave. Plaintiff's first case was Case ID No. 1030000943876 ("Case 3876"), which pertained to Plaintiff's anxiety disorder. ECF No. 76-2,

PageID.1979; ECF No. 76-5; ECF No. 76-8. Plaintiff's second case was Case ID No. 108001343946 ("Case 3946"), which pertained to Plaintiff's back pain associated with lumbar spondylosis and radiculopathy. ECF No. 76-2, PageID.1982–83; ECF No. 76-7, PageID.2109; ECF No. 76-9. Defendant approved Case 3876 for intermittent FMLA leave 2–3 times per month for 2–3 days at a time, and Case 3946 for intermittent FMLA leave 2–3 times per month and 2–3 days at a time. ECF No. 76-8; ECF No. 76-9.

In his complaint, Plaintiff alleges that he did not receive FMLA leave he was entitled to, and that Defendant marked some of Plaintiff's absences as AWOL rather than as FMLA-covered leave. ECF No. 26, PageID.930–31. Plaintiff states that he was subjected to "discipline, physical harassment, mental harassment, intimidation, disparate treatment, hostile work environment, and constructive discharge" because of his FMLA requests. *Id.*

Records show that Defendant regularly granted Plaintiff FMLA leave. From January 22, 2021 to December 8, 2022, Plaintiff received FMLA for 28 separate episodes under Case 3876, including two full-week absences. ECF No. 76-8. From April 4, 2022 to January 18, 2023, Plaintiff received FMLA for 10 separate episodes under Case 3946. ECF No. 76-9. However, Plaintiff did not always receive FMLA leave when he took days off. In a response to one of Defendant's interrogatories, Plaintiff identified the following days where he believes he was marked AWOL

3

instead of receiving FMLA leave to which he was entitled: May 10, 2022; June 13, 2022 to June 28, 2022; July 11, 2022; July 12, 2022; July 18, 2022; July 19, 2022; July 26, 2022; September 2, 2022, September 13, 2022; October 2, 2022; October 3, 2022; and October 4, 2022 to October 21, 2022. ECF No. 76-4, PageID.2084–85.

***May 10, 2022:*** On this date, Plaintiff was ordered to work in "Section 124," which was a temporary assignment outside his normal work area. ECF No. 76, PageID.1897; ECF No. 76-2, PageID.1992–93, 2012–13. This was not the first time Plaintiff had worked in Section 124. The prior month, on April 4, 2022, Plaintiff had aggravated his back working in Section 124 and alleges that a supervisor had denied his request to be removed from the assignment that day because Plaintiff did not have medical restrictions on file.[1] ECF No. 76-10. After the event in April, Plaintiff sent his boss, Alfred Washington, a letter stating that he would not work the Section 124 assignment again and he would "take leave and go home." *Id.* Washington responded that Plaintiff needed to "apply for light duty" if he had reasons that he could not perform the tasks in Section 124. ECF No. 76-11.

When Plaintiff was ordered to work in Section 124 again on May 10, he requested Form 3971, which USPS workers use to request various forms of leave. ECF No. 76-12, PageID.2119–20; ECF No. 76-13. On the form, Plaintiff requested

---

[1] Plaintiff refused to complete his assignment on April 4, 2022 and went home; his partial absence was classified as FMLA sick leave. 76-14, PageID.2123.

7.5 hours of FMLA-LWOP, which is FMLA Leave Without Pay, and wrote "unable to work where I was forced due to health issue." ECF No. 76-13. Plaintiff was denied FMLA; the reason given was that Plaintiff "failed to follow instructions." *Id.* Plaintiff was marked AWOL instead. ECF No. 76-14, PageID.2123.

**_June 13, 2022 to June 28, 2022:_** On June 13, Plaintiff was again assigned to work in Section 124. ECF No. 76-12, PageID.2117. Plaintiff indicated that he would not work that assignment and would engage in a "peaceful protest" by taking FMLA leave; thus, he requested Form 3971 and filled it out, seeking FMLA-LWOP. *Id.* Plaintiff alleges that his supervisor became confrontational with him and refused to sign his Form 3971 or give him a copy; Plaintiff had a panic attack as a result and called the police.[2] *Id.* There is no evidence of Plaintiff's Form 3971 from this day. Thereafter, Plaintiff left work and was marked AWOL for 6.81 hours. ECF No. 76-15; ECF No. 76-2, PageID.2022.

The following day, Plaintiff requested 80 hours of FMLA-LWOP (2 weeks), extending from June 14 to June 28. ECF No. 76-17, PageID.2147. Plaintiff states that he requested this time off due to "anxiety and depression" caused by the incident the preceding day. ECF No. 76-12, PageID.2118. Plaintiff attempted to submit a psychiatrist's note for the absence. *See* ECF No. 76-18. The note stated that Plaintiff

---

[2] The police informed Plaintiff that they could not do anything about the situation because they do not have jurisdiction. ECF No. 76-12, PageID.2116.

was seen by the doctor and that she recommended Plaintiff take two weeks off. *Id.* Defendant rejected the note, stating that it was "not legible." ECF No. 76-19. The rejection letter also stated that medical documentation should "provide an explanation of the nature of the employees [sic] illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his… normal duties for the period of absence." *Id.* The letter went on to specify that vague statements that a patient "received treatment" at the medical facility are not acceptable evidence of incapacitation. *Id.* Regardless of the letter, Plaintiff stated that he did not believe the letter was necessary because he requested FMLA-LWOP, not a paid absence. ECF No. 76-2, PageID.2029.

Ultimately, Defendant attributed Plaintiff's absences during this two-week period as follows: June 14, 17, 25, and 26–28 were FMLA-LWOP; June 18–21 and 24 were AWOL; and June 15–16 and 22–23 were Plaintiff's regular days off. *See* ECF No. 76-20.[3]

**_July 11, 2022:_** On this date, Plaintiff was again assigned to work in Section 124. ECF No. 76-2, PageID.2047–48. Plaintiff refused to do so, instead requesting Form 3971 and asking for 7.5 hours of FMLA-LWOP. ECF No. 76-21. On the form, Plaintiff explained that he was requesting FMLA because there was "[n]o work at

---

[3] Whether a workday was counted as FMLA-LWOP or AWOL is represented by codes. Code 06099 represents FMLA-LWOP. Code 02400 represents AWOL. *See* ECF No.78, PageID.2444.

APBS, Bulpen [sic], Manual." *Id*. In his deposition, Plaintiff explained that "APBS"[4] and "Bullpen" were his normal work assignments and "Manual" was manual labor (such as "casing the mail") where Plaintiff worked overtime on occasion. ECF No. 76-2, PageID.2048. Thus, because there was no work available in those assignments, and Plaintiff refused to work in Section 124, Plaintiff "had to leave" and requested FMLA-LWOP. ECF No. 76-2, PageID.2048. However, Plaintiff's supervisor rejected the FMLA request, stating that Plaintiff was simply refusing to work his assignment. ECF No. 76-21. Thus, Plaintiff's absence was classified as AWOL that day. ECF No. 76-14, PageID.2124.

**_July 12, 2022:_** Plaintiff was again assigned to work outside his normal section on July 12. ECF No. 76-22. He requested Form 3971, sought FMLA-LWOP, and stated that because there was "[n]o work at APBS, Bullpen, Manual," he refused "to work at the location I was harassed before." *Id.* Plaintiff's supervisor stated that Plaintiff "refuses work available!!!" and Plaintiff was ultimately marked AWOL for this day. *Id.*; ECF No. 76-14, PageID.2124.

On the same day, Plaintiff wrote a letter to the Manager of Distribution Operations at the Pontiac Metroplex P&DC. He stated that he is continuing his "ongoing [p]eaceful protest" by refusing work outside of APBS, Bullpen, or Manual.

---

[4] "APBS" stands for Automated Parcel and Bundle Sorter. ECF No. 78, PageID.2445.

ECF No. 76-23. He specified that if there is no work in APBS, Bullpen, or Manual, he will "take leave (LWOP) and go home" and that he would not ask for any accommodations in lieu of leaving. *Id.* Plaintiff does not reference any FMLA issues in this letter.

**_July 18, 2022:_** Plaintiff was assigned to work again in Section 124. He filled out Form 3971, requested FMLA-LWOP, and wrote that because there was no work at APBS, Bullpen, or Manual, he was refusing to work in Section 124 due to back issues. ECF No. 76-24. Plaintiff's supervisor disapproved the FMLA request and wrote "AWOL" on the form; in a partially cut off note, she states that Plaintiff "refused work." *Id.* Plaintiff was marked AWOL for this day. ECF No. 76-14, PageID.2125.

**_July 19 & 26, 2022:_** Plaintiff was marked AWOL for both of these days. *Id.* There is no evidence that Thomas requested FMLA leave.

Between these dates and the next date that Plaintiff alleges that he was entitled to FMLA leave and was not given it, Defendant issued Plaintiff a "Letter of Warning—Conduct Unbecoming of a Postal Worker." ECF No. 76-26 (dated August 2, 2022). In the letter, Defendant states that Plaintiff had failed to follow instructions and abandoned his work on July 11, 18, and 19. *Id.* Defendant stated that in each of those instances, Plaintiff refused work because the temporary assignments he was given were "not in [his] bid assignment." *Id.*

Defendant cited three provisions in the Employee & Labor Relations Manual that Plaintiff had allegedly violated:

> **Section 665.13 Discharge of Duties**: Employees are expected to discharge their assigned duties conscientiously and effectively.
>
> **Section 665.15 Obedience to Orders**: Employees must obey the instructions of their supervisors. If an employee has reason to question the propriety of a supervisor's order, the individual must nevertheless carry out the order and may immediately file a protest in writing to the official in charge of the installation or may appeal through official channels.
>
> **Section 665.16 Behavior and Personal Habits**: Employees are expected to conduct themselves during and outside of working hours in a manner that reflects favorably on the Postal Service…. Employees are expected to maintain harmonious working relationships and not to do anything that would contribute to an unpleasant working environment.

*Id.* The letter concludes by stating that Defendant is affording Plaintiff an opportunity to correct his behaviors, and that he has a right to file a grievance in response to the letter. *Id.*

Plaintiff did file a grievance, and the postal union became involved in the dispute. *See* ECF No. 76-27. On August 9, 2022, the parties reached a settlement wherein the Letter of Warning would expire on February 1, 2023. *Id.* Thereafter, Plaintiff received a letter from the local union president. ECF No. 76-28. This letter stated that the union "recommend[s] that if in the future you have medical issues that make you unable to perform certain functions that may be required as a clerk craft employee you seek the advise [sic] of a medical professional and get any and all

9

restrictions on the record with the appropriate management officials." *Id.* The letter concludes by noting that "[a]ll clerks regardless of their principal assignments may be assigned to other areas[,]" and that if Plaintiff has issues with other assignments he must "follow the instructions to the best of [his] ability and seek the advice of a steward." *Id.*

**_September 2, 2022:_** On this date, Plaintiff alleges that he asked his supervisor to meet with the union to discuss her "lies on FMLA." ECF No. 76-29, PageID.2184. According to Plaintiff, the supervisor had stated that Plaintiff did not have approved FMLA leave for back pain. *Id.* Plaintiff eventually met with the union during a time he was supposed to be working. *Id.* As a result, Plaintiff claims that his supervisor began "yelling and insulting [him]" in front of his coworkers, stating that he cannot meet the union whenever he wants. *Id.* at PageID.2185. Plaintiff then requested Form 3971 because he "cannot work under stress." *Id.* Plaintiff claims that once he completed the form, his supervisor refused to sign it or give him a copy. *Id.* Plaintiff's supervisor informed him to file a grievance with the labor union, which he did. *Id.* at PageID.2186. Ultimately, Plaintiff's request for FMLA-LWOP was disapproved, and he was marked partially AWOL on this day. ECF No. 76-30; ECF No. 76-20, PageID.2172.

***September 13, 2022:*** Although Thomas asserts that he was not given the FMLA he was entitled to on this date, records show that Thomas was given FMLA-LWOP for his 6.67-hour absence. ECF No. 76-14, PageID.2124.

***October 2, 2022:*** On this date, Plaintiff requested FMLA-LWOP and added a note on Form 3971 stating that he cannot work at the assignment he was given because of his back issue. ECF No. 76-31. Plaintiff's absence this day was classified as part-day leave without pay in lieu of sick leave. ECF No. 76-14, PageID.2124.

***October 3, 2022:*** On this date, Plaintiff requested FMLA-LWOP for an entire month—October 3 to November 3, 2022. ECF No. 76-32. He stated that he no longer wanted to work under his superiors due to "never ending harassment and discrimination," so he sought to use his FMLA leave until he received a bid outside the Pontiac office. *Id.* His supervisor disapproved the use of FMLA, stating: "AWOL. Improper use of FMLA." *Id.*

In his answer to Defendant's interrogatory, Plaintiff claims that he was improperly denied FMLA from October 3—October 21. ECF No. ECF No. 76-4, PageID.2084–85. On October 3, Plaintiff received 4.74 hours of sick leave. ECF No. 76-14, PageID.2124. For Plaintiff's remaining dates on which he was scheduled to work (i.e., not his regularly scheduled days off or holidays), he was marked AWOL. *Id.*; ECF No. 79-1, PageID.2506.

After Plaintiff's extended absence, on November 9, 2022, Defendant sent Plaintiff a letter stating that his continued unauthorized absences exceeded those authorized by his FMLA cases. ECF No. 76-33, PageID.2191. The letter noted that Plaintiff offered no additional medical documentation for his continued absence. *Id.* Plaintiff responded to the letter, stating that his leave did not require additional documentation because "[w]hen FMLA certification has already been provided, employees are only required to provide documentation for FMLA absences in excess of (3) days[] when they are requesting paid leave. When the request is for leave without pay, there is no requirement for additional documentation." ECF No. 76-33 (bold and underline omitted).

***Early 2023—Plaintiff Ineligible for FMLA Leave:*** On January 5, 2023, Plaintiff requested FMLA leave. ECF No. 76-36. On January 11, Defendant sent Plaintiff a letter stating that he was no longer eligible for FMLA leave. *Id.* To be an "eligible employee" for FMLA purposes, an employee must have worked at least 1,250 hours in the 12 months preceding the requested leave. 29 U.S.C. § 2611(2)(A). Defendant claimed that Plaintiff fell below this statutory threshold, having worked only 227 hours in the preceding 12-month period. ECF No. 76-36. However, Defendant later admitted that this was a typo; the true amount of hours Plaintiff had worked in the previous 12 months was 1,227. ECF No. 76-37, PageID.2201. Nevertheless, this amount was still below the statutory minimum. *See* 29 U.S.C. §

2611(2)(A). Plaintiff requested FMLA leave twice more in January (on the 18th and the 19th); in both instances, his requests for leave were denied because he had only worked 1,230 and 1,241 hours in the past 12 months, respectively. ECF No. 76-39; ECF No. 79-40.[5]

***March 9, 2023—Plaintiff Resigns:*** Plaintiff resigned on March 9, 2023, via email. ECF No. 76-41. He accused Defendant of various infractions, such as fraudulently altering his documents. *Id.* As it pertains to FMLA, Plaintiff claimed that his FMLA hours were altered because in his January 11 notice of FMLA denial, it stated he only worked 227 hours, whereas in his January 20th notice of FMLA denial, it stated he had worked 1,241 hours. *Id.* Plaintiff also claimed that many of his FMLA leave requests, which were ultimately classified as AWOL, are evidence of "fraudulent changes in [his] account." *Id.*

### b. Procedural Background

Plaintiff filed the instant lawsuit in July 2022. ECF No. 1. In lieu of answering, Defendant filed a Motion for More Definite Statement, ECF No. 19, which the Court granted. ECF No. 25. The Court ordered Plaintiff to amend his Complaint. *Id.* Plaintiff filed his Amended Complaint, which alleges race, gender, national origin, religion, disability, and age discrimination, along with allegations that USPS

---

[5] In Plaintiff's answer to Defendant's interrogatory, he did not identify these January dates as dates in which he was improperly denied FMLA. ECF No. 76-4, PageID.2084–85.

violated the Equal Pay Act, the Whistleblower Protection Act, and the FMLA, and delayed and destroyed mail. ECF No. 26, PageID.919–37. Defendant answered the Amended Complaint and filed a Motion to Dismiss all of Plaintiff's claims except his FMLA claim (Count VII). ECF No. 29; ECF No. 30. The Court granted Defendant's Motion, and the case proceeded on the FMLA claim alone. ECF No. 57.

Count VII of Plaintiff's Amended Complaint does not specify the theories upon which Plaintiff is basing his FMLA claim, although he does include within it a claim that he was constructively discharged. *See* ECF No. 26, PageID.930–32; *see Edgar v. JAC Prods. Inc.*, 443 F.3d 501, 507–08 (6th Cir. 2006) (noting that there are "two distinct theories" upon which an FMLA claim may be based: entitlement/interference and retaliation). In his deposition, Plaintiff repeatedly stated that Defendant did not retaliate against him on account of his FMLA usage or requests; rather, Plaintiff claimed Defendant retaliated against him for reasons not presently at issue in this lawsuit. ECF No. 76-2, PageID.1963–64. Plaintiff also only discussed interference in his response to Defendant's motion. *See* ECF No. 78. Thus, only constructive discharge and interference will be considered.[6]

---

[6] With Plaintiff admitting that there is no causal connection between any "retaliation" he experienced and his FMLA requests themselves, he would not be able to establish his prima facie case for FMLA retaliation. *See Edgar*, 443 F.3d at 508 (the prima facie case requires a showing that (1) plaintiff availed himself of a protected right under FMLA, (2) he suffered an adverse employment action, and (3)

Currently pending before the Court is Defendant's Motion for Summary Judgment. Defendant argues that Plaintiff was not constructively discharged because the alleged events that caused him to quit did not rise to the level of intolerable conduct necessary for the survival of a constructive discharge claim. *Id.* at PageID.1911–12. Defendant contends that Plaintiff's FMLA claim also fails because he cannot show that he was damaged or prejudiced by any alleged wrongdoing, and because he cannot show pretext. *Id.* at PageID.1914, 1917.

Plaintiff does not cogently address the arguments Defendant made, aside from (1) claiming that the information Defendant cites in its motion is "outside the jurisdiction of FMLA," ECF No. 78, PageID.2453; (2) claiming that Defendant classifying Plaintiff's absences as AWOL "was [meant to] discipline [him]" and, presumably, prejudice him, *Id.* at PageID.2452–53; and (3) claiming that "continuous interference and harassment… led to worsening" panic attacks, paranoia, hallucinations, and other complications which led to his constructive discharge. *Id.* at PageID.2456. Plaintiff makes various other claims in his response, such as that Defendant has fraudulently altered his work documents, did not provide him with proper training, assigned him outside his normal work area to injure him,

---

there was a causal connection between the exercise of his rights under FMLA and the adverse employment action).

15

and interfered with his efforts to make bids to transfer to the USPS Troy call center. *Id.* at PageID.2445, 2450, 2451.[7]

### III. LAW & ANALYSIS

#### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When analyzing a summary judgment motion, the inquiry that a court performs is "the threshold inquiry of determining whether there is a need for a trial[,]" or in other words, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 251–52 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," by identifying portions of the record and the evidence that demonstrates an absence of a genuine, material dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When a "properly supported motion for summary judgment is made," the burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine

---

[7] There is no evidence that Defendant altered Plaintiff's work documents, and Plaintiff's other claims are off-point and need not be discussed.

issue for trial." *Anderson*, 477 U.S. at 250. When analyzing a motion for summary judgment, a court "must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)) (internal quotation marks omitted).

### b. Constructive Discharge

#### i.    Law

When an employer constructively discharges an employee on account of the employee's attempts to take FMLA leave, it violates the FMLA. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 726 (6th Cir. 2003), *superseded on other grounds by* 29 C.F.R. § 825.302(d) (finding that a termination based on taking FMLA leave violates the FMLA); *Cipolletti v. Wayne Cnty. Airport Auth.*, No. 19-13120, 2021 WL 3089262, at *7 (E.D. Mich. July 22, 2021). "A constructive discharge occurs when working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (quoting *Talley v. Family Dollar Stores of Ohio*, 542 F.3d 1099, 1107 (6th Cir. 2008)) (internal quotation marks omitted). To make a claim for constructive discharge, a plaintiff must demonstrate that (1) the employer deliberately created working conditions that a reasonable person would perceive as intolerable, (2) the employer

did so to force the employee to quit, and (3) the employee quit. *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024).

Notably, "[c]onstructive discharge is hard to prove." *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 630 (6th Cir. 2018). The conditions must be "indeed hellish, or at least close to it." *Tchankpa*, 951 F.3d at 815. A court may consider the following factors to determine whether work conditions were so intolerable as to rise to the level of constructive discharge:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001).

### ii.    *Analysis*

Plaintiff claims that Defendant subjected him to a "hostile workplace, yelling at [him] and everyone which created [a] stressful workplace every day" when he was at the Pontiac location. ECF No. 78, PageID.2449. He contends that his absences being classified as AWOL rather than FMLA caused his PTSD and panic attacks to worsen. *Id.* at PageID.2449–51. Furthermore, in his deposition, Plaintiff claimed that when he was at the Troy location, Defendant altered his hours in the postal service database to make him ineligible for FMLA with the purpose of firing him. ECF No. 76-2, PageID.1967–68 (referring to his January 2023 requests for FMLA leave when

Defendant denied them for having insufficient hours worked). Plaintiff claims he "blacked out" from anxiety, and it was at this time—in March 2023—that he finally resigned. *Id.* at PageID.1968. Defendant alleges that these claims do not rise to the level of constructive discharge as a matter of law. ECF No. 76, PageID.1911.

First, "criticism and negative feedback" are generally not sufficient to establish a claim for constructive discharge, particularly where it is limited to a few isolated incidents. *Tchankpa*, 951 F.3d at 814; *see also Groening*, 884 F.3d at 631 (an employer's criticisms of plaintiff's frequent FMLA leave, auditing her leave, and other hostility toward her FMLA rights did not make working conditions intolerable); *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012) (employer's "mocking attitude" and public criticisms toward employee were insufficient to establish constructive discharge). Here, even crediting Plaintiff's assertion that he was yelled at and ridiculed in the manner he claims—for which there is no evidence aside from his own testimony—there is certainly no evidence that these events rose to a level that would constitute intolerable conduct and constructive discharge. *Cf. Groening*, 884 F.3d at 630 (rejecting claims similar to Plaintiff's claims).

Furthermore, an employer is entitled to discipline an employee or otherwise respond negatively to employee infractions without it being constructive discharge where there is no materially adverse change in the terms and conditions of an employee's employment. *See, e.g.*, *Kinamore v. EPB Elec. Utility*, 92 Fed. App'x

19

197, 205 (6th Cir. 2004); *Fletcher v. U.S. Renal Care, Inc.*, 240 F. Supp. 3d 740, 750 (S.D. Ohio 2017). In this case, Defendant introduced abundant evidence to suggest that Defendant believed Plaintiff was improperly using FMLA leave to get out of legitimate work assignments. *See* ECF No. 76-22 (Form 3971 where Plaintiff stated he would not work outside his normal assignments because he was harassed, and the supervisor responded that Plaintiff was "refus[ing] work available!!!"); ECF No. 76-26 (Letter of Warning accusing Plaintiff of abandoning his assignments); ECF No. 76-28 (letter from union president informing Plaintiff that he must obtain medical restrictions indicating that he is unable to perform certain functions, and cannot simply walk off the job when he believes he cannot do something). Yet Defendant never changed any condition of Plaintiff's employment nor disciplined him for his unexcused absences. Thus, marking Plaintiff's absences as AWOL and verbally reprimanding him for what Defendant believed to be attempts to use FMLA improperly do not rise to the level of constructive discharge.

There is also no evidence to suggest that Defendant engaged in any conduct *in order to* encourage Plaintiff to resign because he sought FMLA leave. *See Cooper*, 93 F.4th at 373; *Groening*, 884 F.3d at 630. Far from seeking Plaintiff's resignation, evidence suggests that Defendant regularly approved Plaintiff's FMLA leave when Plaintiff requested it for valid reasons and in compliance with administrative procedures, attempted to fix the issues with Plaintiff through its Letter of Warning,

and transferred Plaintiff from the Pontiac location to the Troy location in October 2022 when he requested it. *See* ECF 76-8; ECF No. 76-9; ECF No. 76-26. Plaintiff has offered no other evidence, aside from his own speculation, to demonstrate that Defendant had any intention to convince him to resign.

To the extent Plaintiff claims that Defendant altered his hours so that he would not be entitled to FMLA, Plaintiff has offered no evidence in support. It is true that one of Plaintiff's FMLA denials from January 2023 stated that he had only worked 227 hours in the preceding 26 pay periods. ECF No. 76-36. Defendant admitted this was a typo, and that Plaintiff had actually worked 1,227 hours. ECF No. 76-37. But this amount is still below FMLA's statutory minimum of 1,250 hours. Thus, the typo had no effect on Plaintiff's ultimate denial. The remaining evidence demonstrates that at no point during January 2023 did Plaintiff ever exceed the statute's minimum threshold so as to entitle him to FMLA benefits. ECF No. 76-38; ECF No. 76-39; ECF No. 76-40.

Thus, Plaintiff was not constructively discharged when he resigned from his employment with Defendant.

### c. FMLA Interference

#### i. *Law*

The Family and Medical Leave Act entitles eligible employees to 12 work weeks of unpaid leave during any 12-month period for, among other things, a

"serious health condition" that makes the employee unable to perform the functions of his job. 29 U.S.C. § 2612(a)(1)(D). Furthermore, the Act makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise" the rights provided by the Act. § 2615(a). Employees whose employers violate their rights under the Act may bring an action against the employer for damages in the amount of "wages, salary, employment benefits, or other compensation denied or lost" by reason of the violation, or "actual monetary losses sustained by the employee as a direct result of the violation[.]" § 2617(a)(1)(A). Furthermore, employees are entitled to interest at the prevailing rate, certain liquidated damages, and equitable relief as may be appropriate. *Id.* (a)(1)(A)–(B).

When bringing an interference claim under FMLA (also known as an entitlement claim), "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Arban v. West Pub. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 159 (1st Cir. 1998)). In other words, an FMLA violation occurs under this theory "[i]f an employer interferes with the FMLA-created right[.]" *Id.* To prevail on an interference claim, an employee must show that (1) he was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) the employee was entitled to leave under the FMLA, (4) the employee gave the employer notice of his

intention to take leave, and (5) the employer denied the FMLA benefits to which the employee was entitled. *Edgar*, 443 F.3d at 507. The employer's intent is "not a relevant part" of the interference inquiry. *Id.*

These elements notwithstanding, an employer cannot be liable under FMLA "unless the employee has been prejudiced by the violation[.]" *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (holding that a categorical penalty for employers is inconsistent with the FMLA where the employer technically violates the Act but where no prejudice results to the employee). This is because § 2617, the Act's enforcement provision, provides that an employer is only liable for compensation or benefits lost "by reason of the violation," for other monetary losses sustained "as a direct result of the violation," or for other "appropriate" equitable relief such as reinstatement, promotion, or employment. *Ragsdale*, 535 U.S. at 89; 29 U.S.C. § 2617(a)(1)(A)–(B).

Furthermore, the Sixth Circuit applies the *McDonnell Douglas* burden shifting framework to FMLA interference claims. *See Demyanovich v. Cadon Plating & Coatings, LLC*, 747 F.3d 419, 431–33 (6th Cir. 2014). As such, once the plaintiff establishes his prima facie case, the burden shifts to the employer to demonstrate that it had a "legitimate reason unrelated to the exercise of FMLA rights" for the adverse employment action against the plaintiff. *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973)).[8] If the employer makes that showing, the burden shifts back to the plaintiff to establish that the employer's reason is pretextual. *Demyanovich*, 747 F.3d at 431.

### ii.    *Prejudice Analysis*

Defendant does not attack any of the elements of Plaintiff's prima facie case. Rather, Defendant's first argument is that Plaintiff failed to demonstrate that he was damaged or prejudiced by not receiving FMLA and by instead being marked AWOL or given some other form of leave. ECF No. 76, PageID.1914. Plaintiff responds by stating that being marked AWOL "may be the basis for disciplinary action" according to Defendant's employment policies. ECF No. 78, PageID.2447, 2452. Indeed, Plaintiff notes that he was issued a Letter of Warning for abandoning his work assignments on July 11, 18, and 19. *Id.* at PageID.2452; ECF No. 76-26.

Courts have recognized that where a plaintiff receives other leave in lieu of FMLA, and no adverse consequences resulted because of it, the plaintiff has not suffered prejudice under the Act. *See Taylor v. J.C. Penney Co., Inc.*, No. 16-cv-11797, 2016 WL 4988054, at *5 (E.D. Mich. Sept. 19, 2016) (granting defendant's motion for summary judgment where plaintiff provided no evidence that being

---

[8] Courts, including the Sixth Circuit, have pointed out the tension in applying the *McDonnell Douglas* burden-shifting framework to interference claims, in which the employer's motive or intentions are not supposed to be relevant. *See Donald*, 667 F.3d at 762; *Cipolletti*, 2021 WL 3089262, at *5. Nevertheless, the Sixth Circuit has approved of the use of the framework in the interference context. *Donald*, 667 F.3d at 762; *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008).

marked "Failure to Report" instead of being given FMLA leave prejudiced her);
*Hedge v. Vought Aircraft Indus., Inc.*, No. 3:06-0831, 2008 WL 11510345, at *12
(M.D. Tenn. Aug. 14, 2008) ("There is no cause of action for interference with
FMLA rights when the plaintiff is granted full leave in another form[.]"); *Norring v.
Pace Indus. Castings, LLC*, 215 F. Supp. 3d 810, 813 (D. Minn. 2016) (finding no
prejudice where there was no evidence that being given "points" under defendant's
attendance policy for being tardy or missing work resulted in discipline, docking in
pay, suspension, or other adverse action); *Caplan v. L Brands/Victoria's Secret
Stores, LLC*, 210 F. Supp. 3d 744, 758–59 (W.D. Pa. 2016) (finding no prejudice
where plaintiff was given PTO instead of FMLA and no other consequences resulted
from this fact); *Crawford v. JP Morgan Chase NA*, 983 F. Supp. 2d 1264, 1271
(W.D. Wash. 2013) (finding no prejudice where plaintiff received all the leave he
requested by being given a flexible schedule in lieu of FMLA).

Here, Plaintiff always requested unpaid FMLA leave. In the instances where
Defendant did not classify Plaintiff's absences as FMLA, it typically classified them
as AWOL or, on occasion, sick leave or leave without pay in lieu of sick leave. In
other words, Plaintiff always received leave on the dates he requested leave. *See
Hedge*, 2008 WL 11510345, at *12. Furthermore, because Plaintiff never intended
to receive compensation for these absences, Plaintiff lost no compensation as a result
of his absences being marked as something other than FMLA leave. *See Theiss v.*

*Walgreen Co.*, 632 Fed. App'x 829, 833 (6th Cir. 2015) (plaintiff "suffered no actual damages as a result of… taking numerous [other] absences" while her FMLA request was pending).

Plaintiff also was not disciplined in a way that resulted in actual damages or prejudice. It is true that on August 2, 2022, Plaintiff was given a written Letter of Warning for abandoning his work assignments on July 11, 18, and 19. ECF No. 76-26.[9] However, the Letter specified that it was intended to give Plaintiff "an opportunity to correct the irregularity" with his behavior, and no actual disciplinary action was taken against him at that time. *Id.* Furthermore, Plaintiff filed a grievance and after meeting with the union, it was agreed that the Letter of Warning would expire on February 1, 2023. ECF No. 76-27. Thus, nothing resulted from this Letter of Warning, such as any further discipline, docking of pay, suspension, or other adverse action. *See Norring*, 215 F. Supp. 3d at 813. The mere fact that being marked AWOL *could have* resulted in disciplinary action does not constitute cognizable damages under § 2167, which requires "*actual* monetary losses." *See* 29 U.S.C. § 2167(a)(1)(A)(i)(II) (emphasis added).

To the extent that Plaintiff argues that the prejudice he suffered was the worsening of his mental health issues, *see* ECF No. 78, PageID.2449–50, Plaintiff

---

[9] Notably, there is no evidence that Plaintiff actually requested FMLA leave on July 19, so Plaintiff could not be prejudiced for exercising his FMLA rights on this date.

has presented no evidence that demonstrates that his mental health conditions—which predated his FMLA conflicts—became worse, or that his worsening mental health issues were caused by FMLA interference *specifically*, rather than the numerous other off-point allegations Plaintiff makes against Defendant (such as hostile workplace, etc.). *See Mammen v. Thomas Jefferson Univ.*, 523 F. Supp. 3d 702, 726 (E.D. Pa. 2021) (noting that plaintiff "cite[d] no evidence at all, despite bearing the burden on all the elements of her FMLA interference claim[,]" when granting defendant summary judgment); *Anderson*, 477 U.S. at 250 (stating that if a properly supported motion for summary judgment is made, it is the opposing party's burden to present evidence proving there is a genuine issue of material fact for trial).

Therefore, Plaintiff has failed to demonstrate prejudice.

### iii. *Pretext Analysis*

In the alternative, Defendant argues that even if Plaintiff was prejudiced, he cannot demonstrate that any of Defendant's actions were pretextual. As its legitimate, nondiscriminatory reason for its actions under the *McDonnell Douglas* framework, Defendant states that it denied Plaintiff FMLA leave because Plaintiff stated he was using leave to avoid assignments and to stage "peaceful protests," which are not legitimate uses of FMLA. ECF No. 76, PageID.1917; *see Demyanovich*, 747 F.3d at 431. In his response, Plaintiff does not address this argument in a manner that is comprehensible.

A plaintiff may show that the employer's reasons are pretext if the reasons "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Demyanovich*, 747 F.3d at 431 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). A defendant's reason is not pretext unless it is shown that both the reason was false and that discrimination was the real reason. *Harris v. Metro. Gov. of Nashville and Davidson Cnty., Tenn.*, 594 F.3d 476, 486 (6th Cir. 2010). Furthermore, "as long as the employer held an honest belief in its proffered reason, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Seeger*, 681 F.3d at 285–86 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)) (internal quotation marks omitted).

Here, Defendant claims that it believed Plaintiff was attempting to take FMLA leave for an improper reason: simply to avoid legitimate work assignments. Defendant has provided ample evidence that suggests that this is, in fact, the reason that Plaintiff's FMLA requests were denied. *See, e.g.*, ECF No. 76-22 (Form 3971 where Plaintiff states he is refusing work because he does not want to work where he has been "harassed," and his supervisor states that he is "refus[ing] work available!!!"); ECF No. 76-23 (letter from Plaintiff to management stating that if there is no work available in a few specified areas, he will simply go home as a peaceful protest); ECF No. 76-26 (Letter of Warning to Plaintiff, alleging that he

28

abandoned his work on July 11, 18, and 19); ECF No. 76-28 (union letter to Plaintiff, informing him that he must get medical restrictions on file if he cannot work an assignment, that Defendant can assign him to work where service dictates, and that he cannot simply walk off the job). Furthermore, far from always denying Plaintiff's FMLA requests, Defendant regularly granted Plaintiff FMLA leave throughout his time in Defendant's employment. *See* ECF No. 76-8; ECF No. 76-9.

It is undisputed that peaceful protests and a mere desire not to work a particular assignment are not legitimate reasons to take FMLA leave. *See* 29 U.S.C. § 2612(a)(1). Thus, operating under the honest belief that Plaintiff was asking for FMLA for an improper purpose, Defendant was entitled to deny Plaintiff such leave. In addition, the fact that Defendant "extensive[ly] and freely granted FMLA leave" belies any argument that Defendant had an issue with Plaintiff taking FMLA leave specifically. *Allstot v. Confluence Health*, No. 2:16-cv-00373-SMJ, 2018 WL 3966255, at *6 (E.D. Wash. Aug. 17, 2018). Plaintiff has offered nothing to demonstrate that this legitimate, nondiscriminatory reason was false, let alone that discrimination was the real reason for Defendant's actions.

Therefore, Plaintiff has failed to demonstrate pretext.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment [#76] is **GRANTED.**

Dated:  December 9, 2024                         /s/Gershwin A. Drain
                                                 GERSHWIN A. DRAIN
                                                 United States District Judge


## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 9, 2024, by electronic and/or ordinary mail.
                        /s/ Marlena Williams
                           Case Manager